**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | | |
|---|---|---|
| _____ | : | |
| TD BANK, N.A., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil No. 23-1951 (RBK/AMD) |
| v. | : | |
| | : | **OPINION** |
| CONTINENTAL INSURANCE | : | |
| COMPANY OF NEW JERSEY *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**KUGLER**, United States District Judge:

      **THIS MATTER** comes before the Court upon a series of motions brought under Federal Rule of Civil Procedure 12(b)(6) and (c). Eight Defendants filed Motions to Dismiss Plaintiff's Complaint: Axis Insurance Company ("Axis") (ECF No. 61, Axis Mot. Dismiss); Allied World National Assurance Company ("Allied") (ECF No. 62, Allied Mot. Dismiss); Westchester Fire Insurance Company ("Westchester") (ECF No. 65, Westchester Mot. Dismiss); Zurich American Insurance Company ("Zurich") (ECF No. 66, Zurich Mot. Dismiss); RSUI Indemnity Company ("RSUI") (ECF No. 67, RSUI Mot. Dismiss); AIG Property Casualty Company ("AIG") and National Union Fire Insurance Company of Pittsburg, PA ("National Union"), filing jointly (ECF No. 68, AIG Mot. Dismiss); and Liberty Mutual Insurance Company ("Liberty Mutual") (ECF No. 69, Liberty Mutual Mot. Dismiss) (collectively, "Motions to Dismiss" or "Mots. Dismiss"). Defendant Continental Insurance Company of New Jersey ("Continental") filed a Motion for Judgment on the Pleadings (ECF No. 94, Continental Mot. J. Pleadings).

For the reasons set forth below, Defendants' Motions to Dismiss (ECF Nos. 61–62, 65–69) are **GRANTED IN PART** and **DENIED IN PART**. Defendant Continental's Motion for Judgment on the Pleadings (ECF No. 94) is **DENIED**.

## I.  BACKGROUND

### A.  Introduction

Plaintiff TD Bank, N.A. ("Plaintiff" or "TD Bank") brings claims for breach of contract and bad faith surrounding Defendants' denial of insurance coverage for losses relating to a series of lawsuits involving the Plaintiff and its predecessor in interest, Commerce Bancorp ("Commerce"). (ECF No. 1-1, Compl. ¶¶ 1, 57, 59).

Defendants are a raft of national insurance companies that each sold director and officer insurance policies to Commerce for the period of December 15, 2007, to December 15, 2008. (*Id.* ¶¶ 1, 69). The resulting "tower" of polices consists of $100 million in total insurance: $10 million in primary coverage and $90 million in "excess insurance." The excess insurance is spread across nine additional policies, corresponding roughly with each of the Defendants, that kick in at $10 million intervals.[1] (*Id.* ¶ 85). After Defendant Continental's primary $10 million

---

[1] The primary policy, issued by Defendant Continental, contains a single combined limit of $10 million. (Compl. ¶ 73). The first excess insurer is Defendant National Union, whose policy has an aggregate limit of $10 million that is excess of $10 million in underlying coverage. (*Id.* ¶ 87). Next is Defendant RSUI, whose policy has an aggregate limit of $10 million that is excess of $20 million in underlying coverage. (*Id.* ¶ 94). Defendant Allied's policy has an aggregate limit of $10 that is excess of $30 million in underlying coverage. (*Id.* ¶ 101). Defendant Zurich's policy has an aggregate limit of $10 million that is excess of $40 million in underlying coverage. (*Id.* ¶ 108). Defendant AIG has two policies, the first of which has an aggregate limit of $10 million that is excess of $50 million in underlying coverage. (*Id.* ¶ 115). Defendant Liberty Mutual's policy has an aggregate limit of $10 million that is excess of $60 million in underlying coverage. (*Id.* ¶ 122). Defendant Westchester's policy has an aggregate limit of $10 million that is excess of $70 million in underlying coverage. (*Id.* ¶ 129). Defendant AIG's second policy has an aggregate limit of $10 that is excess of $80 million in underlying coverage. (*Id.* ¶ 136). Lastly, Defendant Axis's policy sits at the top of the "tower," with an aggregate limit of $10 that is excess of $90 million in underlying coverage. (*Id.* ¶ 143).

policy is exhausted, each excess insurance policy provides an additional $10 million in coverage as needed, but only after the policy limits lower in the tower—including from other excess insurers—are exhausted. (*Id.*). Each of the excess insurer policies adopt a "follow form" policy, meaning that they follow the terms and conditions of Defendant Continental's primary policy. *See, e.g.*, (*id.* ¶ 88). In this way, the excess insurers' policies build upon one another in succession, only becoming triggered when the underlying insurance limits are exhausted.

As part of TD Bank's March 31, 2008, merger with Commerce, (*id.* ¶ 56), TD Bank purchased a series of "run-off endorsements" from Defendants that extended the reporting period for coverage under each policy from March 31, 2008, to March 31, 2014. (*Id.* ¶ 70). The run-off endorsements allowed TD Bank to report and pursue claims "to the extent that [TD Bank] indemnifies Insured Persons for a Claim arising out of a Wrongful Act prior to March 31, 2008." (*Id.* ¶ 71). Plaintiff argues that, pursuant to these endorsements, Defendants agreed to provide coverage for the costs (including defense costs and settlement payments) of any lawsuit involving directors and officers levied against TD Bank in connection with any "Wrongful Acts" alleged to have occurred prior to the merger. (ECF No. 97, Opp. Br. at 3). Plaintiff argues further that the run-off endorsements expressly cover "mixed claims"—that is, lawsuits alleging wrongful acts occurring both before and after the merger date. (*Id.*). Defendants each denied coverage by letter between April 2011 and May 2012. (Compl. ¶ 151–59). Defendants disagree that the denials amount to a breach of the policies' terms, and they seek to dismiss Plaintiff's claims alleging the same.

### B.    Factual Background

The Court assumes the parties' familiarity with the underlying dispute, but we review the essential facts for purposes of the instant Motions. In November 2007, the orchestrator of a Ponzi

scheme—who is not a party to this case—began moving assets and accounts to Commerce with assistance from Commerce officers Frank A. Spinosa and Rosanne C. Caretsky. (*Id.* ¶¶ 33, 37, 42, 48). After TD Bank merged with Commerce, Spinosa and Caretsky became employed as officers with TD Bank. (*Id.* ¶ 56). The scheme continued at TD Bank after the merger and with the officers' continued involvement. (*Id.* ¶ 57).

After the scheme's dissolution, the victims filed numerous civil actions against TD Bank. (*Id.* ¶ 59). Seven of these lawsuits were also filed against Spinosa and Caretsky, with TD Bank indemnifying the officers in each suit. (*Id.*). Although Spinosa departed TD Bank in 2009, TD Bank agreed to pay for his and Caretsky's defense costs. (*Id.* ¶¶ 60–63). TD Bank paid nearly $5 million in defense costs for the suits involving Spinosa and Caretsky. (*Id.* ¶ 63). The seven lawsuits were settled for payments totaling over $260 million, with TD Bank and the officers obtaining full liability releases. (*Id.* ¶¶ 64–66). Neither Spinosa nor Caretsky reimbursed TD Bank for any of these settlements or defense payments. (*Id.* ¶ 65). Plaintiff alleges that at no time prior to its indemnification of Spinosa and Caretsky was it aware that either officer participated in the scheme or acted against TD Bank's interests. (*Id.* ¶ 184).

Following these lawsuits, TD Bank submitted a claim to each insurer Defendant, seeking payment for the defense costs and settlement payments that TD Bank paid in indemnification with respect to the scheme. (*Id.* ¶¶ 149–50). Each Defendant denied coverage. (*Id.* ¶¶ 150–59). Plaintiff refutes these denials, asserting that a plain reading of the terms of each policy confirms that no exclusion applies to prevent coverage for Plaintiff's loss stemming from its payments. (*Id.* ¶ 188). As a result, Plaintiff alleges that it is entitled to reimbursement for its losses for the settlement payment and defense costs "up to the full limits of liability" of Defendants' policies. (*Id.* ¶ 189).

### C.      Procedural History

Plaintiff filed its initial Complaint in the Superior Court of New Jersey, Camden County, on April 6, 2023. (ECF No. 1-1, Compl.). Defendant Axis timely filed a Notice of Removal on April 6, 2023. (ECF No. 1, Notice of Removal). On June 26, 2023, eight of the Defendants filed Motions to Dismiss the Complaint for failure to state a claim, (ECF Nos. 61–62, 65–69), and Defendant Continental filed an Answer. (ECF No. 64, Continental Answer). On July 27, 2023, Defendant Continental filed a Motion for Judgment on the Pleadings. (ECF No. 94, Continental Mot. J. Pleadings).

Plaintiff filed a consolidated brief opposing the Motions to Dismiss on August 22, 2023. (ECF No. 97, Opp. Br. Mots. Dismiss). On August 29, 2023, Plaintiff filed a brief in opposition to Defendant Continental's Motion for Judgment on the Pleadings. (ECF No. 99, Opp. Br. Mot. J. Pleadings). On September 18, 2023, eight of the Defendants filed a reply to Plaintiff's brief opposing the Motions to Dismiss: Defendant Axis (ECF No. 108, Axis Reply); Defendant Liberty Mutual (ECF No. 109, Liberty Mutual Reply); Defendant RSUI (ECF No. 110, RSUI Reply); Defendants AIG and National Union, filing jointly (ECF No. 111, AIG Reply); Defendant Westchester (ECF No. 112, Westchester Reply); Defendant Zurich (ECF No. 113, Zurich Reply); Defendant Allied (ECF No. 114, Allied Reply). On the same date, Defendant Continental filed a reply to Plaintiff's brief opposing the Motion for Judgment on the Pleadings. (ECF No. 115, Continental Reply). The matter is now fully briefed and ripe for review.

## II.      JURISDICTION

This Court has jurisdiction pursuant to the federal diversity and removal statutes, 28 U.S.C. §§ 1332(a) and 1441(a). As discussed above, Defendant Axis timely removed this matter from the Superior Court of New Jersey, Camden County, on May 5, 2023, alleging

jurisdiction under § 1332(a) by claiming complete diversity of citizenship and an amount in controversy exceeding $75,000. (Notice of Removal ¶ 4). There is complete diversity of citizenship between the parties because Plaintiff is a citizen of Delaware,[2] and no Defendant is a citizen of Delaware.[3] (*Id.* ¶ 15). The parties do not contest citizenship, personal jurisdiction, or the amount in controversy. Because § 1332(a)'s complete diversity and amount-in-controversy requirements are met, the Court has subject-matter jurisdiction to hear this dispute.

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the

---

[2] Plaintiff TD Bank is a national bank with its main office located in Delaware, as designated by its articles of association.[2] (ECF No. 1, Notice of Removal ¶ 5; ECF No. 1-1, Compl. ¶ 7). For diversity purposes, a national bank's citizenship is "in the State designated in its articles of association as its main office." *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006). Accordingly, Plaintiff is a citizen of Delaware. *See also Dillard v. TD Bank, NA*, Civ. No. 20-7886, 2021 WL 1085461, at *1 & n.1 (D.N.J. Mar. 22, 2021) (adopting TD Bank's representation that it is a citizen of Delaware for diversity purposes).

[3] Defendant Continental Insurance Company of New Jersey ("Continental") is a New Jersey corporation with its principal place of business in Chicago, Illinois. (Compl. ¶ 8). Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a Pennsylvania corporation with its principal place of business in New York, New York, and it is a subsidiary of the American International Group ("AIG"). (*Id.* ¶ 9). Defendant RSUI Indemnity Company ("RSUI") is a New Hampshire corporation with its principal place of business in Atlanta, Georgia. (*Id.* ¶ 10). Defendant Allied World National Assurance Company is a New Hampshire corporation with its principal place of business in New York, New York. (*Id.* ¶ 11). Defendant Zurich American Insurance Company is a New York Corporation with its principal place of business in Schaumburg, Illinois. (*Id.* ¶ 12). Defendant AIG Property Casualty Company is an Illinois corporation with its principal place of business in Chicago, Illinois. (*Id.* ¶ 13). Defendant Liberty Mutual Insurance Company is a Massachusetts corporation with its principal place of business in Boston, Massachusetts. (*Id.* ¶ 14). Defendant Westchester Fire Insurance Company is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. (*Id.* ¶ 15). Defendant Axis is an Illinois corporation with its principal place of business in Alpharetta, Georgia. (*Id.* ¶ 16).

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (quoting *Iqbal*, 556 U.S. at 678). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### B.    Motion for Judgment on the Pleadings

Generally, a motion for judgment on the pleadings under Rule 12(c) "is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). While it is generally true that a Rule 12(c) motion for judgment on the pleadings is treated similarly to a motion to dismiss under Rule 12(b)(6), there are significant differences. *Nafar v. Hollywood Tanning Sys., Inc.*, Civ. No. 06-3826, 2007 WL 1101440, at *2 (D.N.J. Apr. 10, 2007).

First, a Rule 12(c) motion is brought after the close of the pleadings, while a Rule 12(b)(6) motion is brought before the close of the pleadings. *Syncsort, Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 324 (D.N.J. 1999). Second, a motion for judgment on the pleadings will be granted "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262 (3d Cir. 2008) (citing *Allah v. Brown*, 351 F. Supp. 2d 278, 280 (D.N.J. 2004)). Under Rule 12(c), "judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)). In this way, a Rule 12(c) motion for judgment on the pleadings is distinct from a Rule 12(b)(6) motion to dismiss, where the latter "is directed solely towards the procedural defects or the statement of the Plaintiff's claim for relief and does not seek to determine the substantive merits of the controversy." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* ("Wright & Miller") § 1369 (3d ed. 2004). However, "[a] motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim" is reviewed under the Rule 12(b)(6) standard. *Revell*, 598 F.3d at 134.

## IV.   DISCUSSION

### A.   Defendant Continental's Motion for Judgment on the Pleadings

Unlike the other Defendants, Defendant Continental seeks a Motion for Judgment on the Pleadings pursuant to Rule 12(c). *See* (ECF No. 94). The Third Circuit has not addressed the question of whether, for purposes of a Rule 12(c) motion, the pleadings are considered "closed" in a multi-defendant case if only one defendant has answered the complaint. *See Cook v.*

*TransUnion*, Civ. No. 23-1146, 2024 WL 128204, at *1 (E.D. Pa. Jan. 11, 2024) (citing *Nagy v. De Wese*, 705 F. Supp. 2d 456, 460 n.4 (E.D. Pa. 2010)).[4]

However, because a motion for judgment on the pleadings may be analyzed under the same standard as a motion to dismiss under Rule 12(b)(6), *see Wolfington*, 935 F.3d at 195, the Court construes Defendant Continental's Motion as a motion to dismiss. *See also Cook*, 2024 WL 128204, at *1 (opting for same); *Barlett*, 2009 WL 1010479, at *1 (recognizing that "Rule 12(c) motions can be treated as Rule 12(b)(6) motions when the relief requested derives from that section of the rule") (citing 5C Wright & Miller § 1367). Accordingly, we deny Defendant Continental's Motion for Judgment on the Pleadings (ECF No. 94) to the extent that it requests a judgment on the merits. Instead, we review Defendant Continental's Motion for dismissal under Rule 12(b)(6) and rule on the same basis as the other Defendants' Motions to Dismiss.

### B.   Defendants' Motions to Dismiss

The instant dispute concerns the nonpayment of insurance to cover Plaintiff's defense and settlement costs relating to lawsuits arising from the Ponzi scheme totaling over $260 million— an amount well over Plaintiff's total coverage under Defendants' plans. Because Plaintiff is seeking recovery of this amount plus damages, fees, and costs, *see* (Compl. ¶¶ 200, 208, 215, 225), a finding of breach would likely implicate all Defendants, from primary plan owner

---

[4] A number of district courts in the Third Circuit and elsewhere have held that the pleadings are *not* considered closed in a multi-defendant case until all defendants have answered the complaint. *See, e.g.*, *United States ex rel. Barlett v. Tyrone Hosp., Inc.*, Civ. No. 04-57, 2009 WL 1010479, at *1 (W.D. Pa. Apr. 14, 2009) ("[N]ot all of the other defendants have filed answers to the Second Amended Complaint and therefore, the pleadings are not closed so that a Rule 12(c) motion can be made."); *DJCBP Corp. v. City of Baldwin Park*, Civ. No. 2:23-384, 2023 WL 5962607, at *2 (C.D. Cal. Aug. 3, 2023) ("[W]hen a plaintiff sues multiple defendants and one of them answers and then files a Rule 12(c) motion, that motion is premature if the other defendants have not answered."); *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 840 (N.D. Ohio 2009) ("If a case has multiple defendants, all defendants must file an answer before a Rule 12(c) motion can be filed.").

Defendant Continental all the way up to Defendant Axis at the top of the excess insurer "tower."[5]

Accordingly, we address Defendants' Motions to Dismiss in aggregate.

        i.     <u>Counts I–II: Breach of Contract Claims</u>

Plaintiff brings two claims for breach of contract: one for coverage of defense costs and the other for coverage of the settlement agreements. Because Plaintiff's breach of contract claims each center on common questions—including whether the run-off endorsements apply to acts occurring prior to March 31, 2008—we review the claims together. Additionally, because the parties do not contest choice of law, we follow Plaintiff's presumption that New Jersey law governs the policies at issue. *See* (Opp. Br. at 3–4).

In New Jersey, a valid breach of contract claim requires the existence of "a valid contract, defective performance by the defendant, and resulting damages." *22nd Century Techs., Inc. v. iLabs, Inc.*, No. 22-1830, 2023 WL 3409063, at *3 (3d Cir. May 12, 2023) (citing *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). An insurance policy is a contract that will be enforced as written when its terms are clear so that the expectations of the parties will be fulfilled. *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (citing *Kampf v. Franklin Life Ins. Co.*, 161 A.2d 717 (N.J. 1960)). When considering the meaning of an insurance policy, courts interpret the language "according to its plain and ordinary meaning." *Id.* (citing *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255 (N.J. 1992)). If the terms are ambiguous, they are construed against the insurer to give effect to the insured's reasonable expectations. *Doto v. Russo*, 659 A.2d 1371, 1377 (N.J. 1995).

---

[5] Although the excess insurer policies contain certain provisions and wording unique to a particular policy, each policy "follows form" to the original coverage concerning both the run-off period and director and officer liability in Defendant Continental's policy. *See* (Compl. ¶¶ 88, 95, 102, 109, 116, 123, 130, 137, 144); (Opp. Br. at 6–7).

Exclusionary clauses are presumptively valid and are enforced if they are "specific, plain, clear, prominent, and not contrary to public policy." *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 17 (N.J. 1997). "In general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." *Am. Motorists Ins. Co. v. L–C–A Sales Co.*, 713 A.2d 1007, 1013 (N.J. 1998) (cleaned up). As a result, exclusions are ordinarily strictly construed against the insurer, and courts apply the meaning that supports coverage rather than the one that limits it if there is more than one possible interpretation of the language. *Flomerfelt*, 997 A.2d at 997 (cleaned up). At bottom, "courts must evaluate whether, utilizing a fair interpretation of the language, it is ambiguous." *Id.* (quotation marks omitted).

The coverage dispute in this matter centers, *inter alia*, on the language surrounding the run-off endorsements extending Commerce's insurance coverage to TD Bank following the merger. Although each excess insurer policy has its own run-off "follow form" language, the Court focuses on Defendant Continental's original run-off endorsement for purposes of this Motion because it anchors the "tower" of claims in this case. *See* Part I.A, *supra*. The run-off endorsement in Defendant Continental's policy states in relevant part:

> Toronto-Dominion Bank, including any of its subsidiaries, shall be able to seek reimbursement under the corporate reimbursement and entity coverage parts, but only to the extent that it:
>
> a.   indemnifies ABC Corp. Insureds for a Claim arising out of a Wrongful Act prior to March 31, 2008; or,
> b.   has been found legally liable for any Claims that are brought against any ABC Corp. Insureds for an entity coverage Claim arising out of a Wrongful Act committed by ABC Corp. Insureds prior to March 31, 2008

(Compl. ¶ 83).[6]

---

[6] Defendant Continental's policy defines "ABC Corp." as the insured listed in the declarations for the policy, which, in this instance, is Commerce. (Compl. ¶ 76).

Also at issue is whether Spinosa and Caretsky's actions may be interpreted as

"Wrongful Acts" warranting coverage. A "Wrongful Act" is defined in the policy as:

> a. any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the Insured Persons in their capacity as such or, with respect to Insuring Agreements 4 and 5 (if included), in an Outside Position or, with respect to Insuring Agreement 3 (if included), by ABC Corp. or any Subsidiary, or
> b. any matter claimed against the Insured Persons solely by reason of their serving in such capacity or, with respect to Insuring Agreements 4 and 5 (if included), in an Outside Position.

(*Id.* ¶ 81).

As discussed, the policy provided coverage for, *inter alia*, the liability of directors and

officers. (*Id.* ¶ 71). Accordingly, "Insured Persons" are expressly defined in the policy as:

> a. all past present or future duly elected or appointed *directors and/or officers* of ABC Corp. or any Subsidiary or, with respect to a Subsidiary incorporated outside the United States, their functional equivalent; and
> b. solely with respect to any Securities Claim, any other past, present or future full-time or part-time employees of ABC Corp. or any Subsidiary, provided such other employees are not included as Insured Persons for purposes of Exclusions 1.g or 1.h of this Coverage Part.

(*Id.* ¶ 79) (emphasis added).

Plaintiff argues that a plain reading of the terms of the policy confirms that "no exclusion

applies to prevent coverage" for TD Bank's loss. (Compl. ¶ 188). Plaintiff alleges that several

insurer Defendants, meanwhile, have taken the position that all "Wrongful Acts" involving TD

Bank directors and officers—including Spinosa and Caretsky—are excluded from coverage.

(*Id.*). Plaintiff alleges further that "[e]ven a cursory investigation of the facts underpinning the

allegations against TD Bank related to the Ponzi Scheme" would have revealed that "some or

all" of Plaintiff's loss was caused by "Wrongful Acts" of Spinosa and Caretsky occurring before

the run-off period, thereby warranting coverage under the Defendants' policies. (*Id.* ¶ 186).

The Court finds that a "fair interpretation" of the language in the above provisions points to ambiguity as to whether Plaintiff is entitled to coverage. *See Flomerfelt*, 997 A.2d at 997. It is unclear, for example, whether Plaintiff may claim coverage for Spinosa and Coretsky's alleged "Wrongful Acts"—that is, their roles in the Ponzi scheme—when those actions occurred both before *and* after the run-off period. *See* (Compl. ¶¶ 56–57). At any rate, we cannot yet find at this early stage in the litigation that such coverage for a so-called "mixed claim," *see* (Opp. Br. at 3), is excluded under the "plain and ordinary meaning" of the provisions, nor can we find that Defendants met their burden to show that such a claim would preclude coverage as a matter of law. *See Flomerfelt*, 997 A.2d at 996; *Am. Motorists Ins. Co.* 713 A.2d at 1013.

To be sure, we are not required at this stage to determine whether Plaintiff is entitled to coverage as a matter of law or whether Defendant Continental—and, subsequently, the other excess insurer Defendants—did in fact breach the terms of their policies by refusing to provide Plaintiff with coverage. Rather, for Plaintiff's breach of contract claim to survive a motion to dismiss, we need only find that Plaintiff's facts alleging the same were well-pleaded and plausibly give rise to an entitlement for relief. *See Iqbal*, 556 U.S. at 679. Plaintiff has met that burden here. In pointing to specific ambiguities in the policy language and indicating "reasonable reliance" on its conflicting interpretation of the same, *see Doto v. Russo*, 659 A.2d at 1377, Plaintiff has adequately pleaded claims for breach of contract that survive a motion to dismiss. Accordingly, we deny Defendants' Motion with respect to Counts I and II.

> ii.     Count III–IV: Bad Faith Claims

Plaintiff fails to sufficiently plead its two claims of bad faith for Defendants' refusal to cover the defense costs and settlement payments. In New Jersey, to allege bad faith in the insurance context, a plaintiff must allege facts to plausibly suggest that the insurer (1) did not

have a "fairly debatable" reason for its failure to pay the claim, and (2) that the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim. *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 Fed. App'x 594, 599 (3rd Cir. 2004) (citing *Pickett v. Lloyds*, 621 A.2d 445, 454 (N.J. 1993)). "If a claim is 'fairly debatable,' no liability in tort will arise." *Pickett*, 621 A.2d at 453.

In order to meet the "fairly debatable" standard, a plaintiff must establish as a matter of law a right to summary judgment on the substantive claim; a plaintiff who cannot do so is not entitled to assert a claim for bad faith—including at the motion to dismiss stage.[7] *See Fuscellaro v. Combined Ins. Group, Ltd.*, Civ. No. 11-723, 2011 WL 4549152, at *5 (D.N.J. Sept. 29, 2011) (dismissing plaintiff's bad faith claim on a motion to dismiss where insurer's reason for refusing to pay presented disputed issues of material fact) (citing *Pickett*, 621 A.2d at 454); *Ketzner*, 118 Fed. App'x at 599 (stating that "if there are material issues of disputed fact . . . an insured cannot maintain a cause of action for bad faith").

It is undeniable that genuine issues of material fact remain as to Plaintiff's underlying breach of contract claims. *See* Part IV.A, *supra*. Because Plaintiff's Complaint fails to show that Defendants' reasons for denying coverage are not in dispute, it follows that Defendants' reasons for denying coverage must be considered "fairly debatable." *See Ketzner*, 118 Fed. App'x at 599;

---

[7] To adequately plead a claim of bad faith, Plaintiff must first establish that it is entitled to summary judgment on the underlying breach of contract alleged in Counts I and II—that is, that Defendants' reasons for denying coverage are *not* debatable as a matter of law. *See Pickett*, 621 A.2d at 453. In other words, the "fairly debatable" standard for bad faith claims requires only that the Court identify the existence of material issues of disputed fact in the underlying breach of contract claims. Although the Court recognizes that the *Pickett* standard presents unique difficulties for bad faith claims at the motion to dismiss stage, *see Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 401–02 (D.N.J. 2000) (doubting "the wisdom" of the *Pickett* standard); *Snowden v. Standard Ins. Co.*, Civ. No. 23-2493, 2024 WL 1154471, at *3 n.2 (D.N.J. Mar. 18, 2024) (citing same), we are nevertheless compelled to apply the substantive law of New Jersey as determined by the state's highest court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

*Pickett*, 621 A.2d at 454. Accordingly, Plaintiff cannot maintain either of its claims for bad faith.

*See id.*; *Fuscellaro*, 2011 WL 4549152, at *5. Defendants' Motions are granted with respect to Counts III and IV.

## V.    CONCLUSION

For these reasons, Defendants Motions to Dismiss (ECF Nos. 61–62, 65–69) are

**GRANTED IN PART** and **DENIED IN PART**. Defendant Continental's Motion for Judgment

on the Pleadings (ECF No. 94) is **DENIED**. An Order follows.


Dated:  March 28, 2024                       /s/ Robert B. Kugler
                                             ROBERT B. KUGLER
                                             United States District Judge